JEFFREY M. STAMBOVSKY *v.* SADDLE PEAK
PRODUCTIONS, INC., ET AL.
(4137)

DAVID L. BAIN *v.* SADDLE PEAK PRODUCTIONS, INC.
(4138)

HULL, DALY and BIELUCH, Js.

Argued April 1—decision released August 5, 1986

*Ralph C. Crozier,* for the appellant (named defendant in each case).

*Charles R. Ebersol, Jr.,* for the appellee (plaintiff in the first case).

*William J. Manasse,* for the appellee (plaintiff in the second case).

BIELUCH, J. These two appeals arise out of separate actions, consolidated in the trial court, regarding the

sale of a parcel of residential real estate consisting of 8.807 acres and located in New Milford. In the first action, *Stambovsky* v. *Saddle Peak Productions, Inc., et al.* (hereinafter *Stambovsky*), the plaintiff sought specific performance of his contract to purchase the property in question from the named defendant,[1] as well as damages and attorney's fees. In the second action, *Bain* v. *Saddle Peak Productions, Inc.* (hereinafter *Bain*), the plaintiff, a real estate broker, sought a commission of 6 percent from the defendant pursuant to their brokerage agreement as the result of his procurement of a buyer, namely Stambovsky, who was ready, willing and able to purchase the defendant's real estate for the sum of $215,000 in accordance with the terms of a purchase and sale agreement. After a trial to the court, judgment was rendered for the plaintiff on the complaint and on the counterclaim in both cases. From these judgments, the corporate defendant has appealed in each case. In *Stambovsky,* the defendant claims that the court erred: (1) in finding that one of the two directors, officers and stockholders of Saddle Peak had the authority to sign the purchase and sale agreement; and (2) in awarding attorney's fees to the plaintiff. In *Bain,* the defendant claims that the court erred in concluding that the listing agreement between the parties satisfied the requirements of General Statutes § 20-325a (b).[2] We find no error in either appeal.

---

[1] This action was originally instituted against the corporate defendant, Saddle Peak, as well as against Reiko Douglas, a/k/a Reiko Crickard, and Jack Douglas, a/k/a Douglas Crickard. We note that Douglas Crickard, in the judgment file, is erroneously named Jack Crickard. The Douglases were the sole directors, officers and stockholders of Saddle Peak. The action was subsequently withdrawn as against them, however, and they are not parties to the Stambovsky appeal.

[2] Although the two preliminary statements of the issues filed by the defendant contain a total of six issues, the two briefs which it has filed raise in combination only these broad issues. Furthermore, the two arguments in the *Stambovsky* brief are not divided by points presented as required by Practice Book § 3060F (d).

The trial court found the following facts. On January 6, 1984, the corporate defendant entered into an open real estate listing contract with Bain, a licensed real estate broker, through its secretary and treasurer, Reiko Douglas. The listing agreement provided that Bain would receive a commission of 6 percent from the defendant if he procured a buyer who was ready, willing and able to purchase the property on the terms set forth or upon such other terms as were acceptable to the defendant. As a result of Bain's efforts, on April 23, 1984, Stambovsky contracted to purchase the property from the defendant for the sum of $215,000. A deposit of $21,500 was given by Stambovsky upon the execution of the contract. The purchase agreement was signed on behalf of the defendant by Reiko Douglas as "president" of the corporation. In fact, Jack Douglas, who was present at the signing, was the president of Saddle Peak.

Subsequent to the signing of the contract for purchase of the property, Stambovsky obtained a mortgage commitment subject to several standard conditions, one of which was that a water test be performed on the property. The seller, however, refused to permit access to the property for the test to be performed, and for that reason, the transfer of the property could not take place on May 21, 1984, the date originally specified for the closing of title. Faced with this inability to comply with his lender's conditions, Stambovsky secured the balance of the purchase price due, $193,500, from a commercial lender without the use of a mortgage as collateral. This amount was tendered to the defendant on May 25, 1984, but it refused to convey the land.

On June 1, 1984, the defendant permitted Stambovsky to have a water test taken. A satisfactory result was obtained on the next day. A closing was then scheduled for June 8, 1984. At that time, the defendant, through Jack Douglas, refused to convey the property because

Stambovsky's certified checks were payable to the defendant's attorney as trustee,[3] rather than to Saddle Peak directly. Jack Douglas then discharged Saddle Peak's attorney and refused to complete the conveyance. Another closing was scheduled for June 11, 1984. Once again, however, the defendant refused to convey the property even though Stambovsky was ready, willing and able to complete the purchase. These actions were then filed.

The trial court found that Bain had procured a ready, willing and able buyer and was, therefore, entitled to his commission. The court also concluded that Jack Douglas, acting on behalf of Saddle Peak as president, had ratified the contract executed by his wife, Reiko Douglas, mistakenly identified as "president" of the corporation for the purchase and sale of the property, and that Stambovsky had fully performed his part of the contract. The court further concluded that in neither action had the defendant proved its special defenses or counterclaim and awarded damages to each plaintiff.

The defendant's claims of error are, for the most part, thinly veiled attempts to retry the facts of these cases, "a practice against which we have apparently inveighed in vain." *MacArthur/Nathan Associates* v. *Edson Realty, Inc.,* 3 Conn. App. 675, 676, 491 A.2d 1111 (1985).

A review of the record demonstrates that the court was well within its discretion in finding, as it did, that when Reiko Douglas signed both the listing agreement and the contract for the purchase and sale of the property, she did so with the authorization of the corporation of which she and her husband were the sole

---

[3] This was done because several encumbrances existing on the property were to be paid by the defendant's attorney from the sale proceeds at the closing in order to transfer a clear title.

directors, officers and shareholders. Despite the lack of a formal corporate resolution to sell the property, the trial court reasonably found from the evidence that all the directors, officers and stockholders authorized the agreement listing the property with Bain and further authorized its sale, through Bain's agency, to Stambovsky. The open listing agreement identified the owner of the property as "Saddle Peak Productions." Referring to: (1) the corporate address of the owner given on the listing; (2) the signature of Reiko Douglas on behalf of the owner while she was the corporation's secretary and treasurer; (3) the insertion of the listed price by Jack Douglas who was its president; and (4) the identification of Reiko Douglas and Jack Douglas as the sole directors, officers and stockholders of the corporation, the court concluded that Saddle Peak Productions and Saddle Peak Productions, Inc., were one and the same entity. The court also concluded that Reiko Douglas clearly had authority to sign the listing on behalf of the corporation, which she purported to do in the presence of Jack Douglas who acquiesced in the corporate agreement when he typed the sales price in the blank provided, that act constituting confirmation of his agreement on behalf of the corporation to all other terms.

In concluding that the agreement for the sale of the property to Stambovsky was authorized by the directors and duly executed by an officer of the corporation, the court found that Reiko Douglas signed the contract as an officer, which she was. Her office was misidentified as president when she or Jack Douglas so indicated to the corporation's attorney for the purchase and sale contract. Both were present at the execution of this document and, by their conduct, approved its terms and confirmed the authority of the signature of Reiko Douglas on behalf of the corporation, albeit she was, through their error and information, identified

as the president rather than the secretary and treasurer. Since they were the defendant's only directors, their approval of the contract expressed the authorization of the board of directors, as the court concluded, to the terms, conditions and consideration specified in the agreement for the sale of the corporate property as required by the provisions of General Statutes § 33-372 (c).

There is no error on either appeal.

In this opinion the other judges concurred.